UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 08-110-DLB

JOHN COLEBROOK                                                      PLAINTIFF

v.                      MEMORANDUM OPINION AND ORDER

KENTUCKY DEPARTMENT OF MOTOR
VEHICLE ENFORCEMENT, ET AL.                              DEFENDANTS

** ** ** ** ** ** ** **

## I.    Introduction

This matter is before the Court on two pending motions to dismiss which are ripe for consideration.  Defendants Kentucky State Police (KSP) and unknown KSP Troopers in their official capacities have moved to dismiss the complaint on various grounds (Doc. #3).  Defendant Kentucky Division of Motor Vehicle Enforcement (KDMVE) and Defendant Scott in his official capacity have moved to dismiss the complaint on identical grounds (Doc. #5).  Both motions have been fully briefed and are ripe for decision.  Having considered the arguments and authorities cited by the parties, for the reasons set forth below, both motions will be **granted**.

## II.   Factual[1] Background

In his complaint, Plaintiff seeks damages for injuries suffered as a result of an incident that occurred on June 22, 2007, after he was stopped for speeding by Defendant

_____

[1] When considering a motion to dismiss, all facts must be viewed in the light most favorable to the nonmoving party.  *Bassett v. NCAA,* 528 F.3d 426, 430 (6th Cir. 2008).  Thus, the factual summary is taken from the Plaintiff's Complaint.

Mark Scott of the KDMVE.  More specifically, Plaintiff alleges the following facts, which are

set forth in his complaint:

8.  On or about June 22, 2007, the Plaintiff was driving his vehicle on a return trip from Lexington, Ky.

9.  On said date, at approximately 10:30 p.m., EST, Plaintiff was stopped, for allegedly speeding (65 mph. in a 55 mph. construction zone), by Defendant Scott of the Dept. of Motor Vehicles near the Dry Ridge Exit off of I-75 in Grant County, Ky. At all times herein there was no attempt on the part of the Plaintiff to disobey the signal to stop his vehicle but rather he had to travel a short distance in order to safely stop his vehicle on I-75 Northbound.

10.  As of the time of the said traffic stop, the Plaintiff was not subject to any outstanding summons or warrant for a misdemeanor or a felony, nor was he advised that such was the case.

11.  Upon allegedly seeing an open beer can between the seats in the dark Officer Scott then had the Defendant immediately exit his car for the purpose of conducting 3 field sobriety tests on a busy I-75 to which the Plaintiff offered no resistance by threat or otherwise. Plaintiff complied with all requests made by the Defendant Scott to the best of his ability after having advised Officer Scott of a pre-existing medical condition that would not allow him to take or certainly pass the more physical field sobriety tests known as the walk and turn and the one leg stand. The Plaintiff took the HGN test as well despite the fact Officer Scott knew said test would not be used in court as said test has been determined to "not" be scientifically reliable and was completely "subjective" in nature.

12.  That at all times relevant hereto Officer Scott was very agitated and angry at the Defendant for not having pulled over in a more timely fashion and exhibited same upon initial contact with the Plaintiff for no apparent reason.

13.  That Officer Scott immediately made the decision to arrest the Plaintiff for DUI and while in the process of handcuffing the Plaintiff then advised via citation in this matter the Plaintiff "allegedly removed a white packet from his pants pocket and threw same in the weeds" and then began to resist to the point of attempting to supposedly push Officer Scott into the traffic on I-75 after which point Officer Scott began to accost the Plaintiff without any justification, provocation, without verbal or demonstrative threat or any legal justification whatsoever.

14.  That Officer Scott engaged in an intentional, vicious, deliberate, and prolonged attack towards the Plaintiff by hitting him with his baton, throwing him to the ground, pummeling, beating, kicking, twisting of limbs, verbally abusing him, macing him, etc. until various Ky. State Police Officers arrived on the scene and continued to do same even after handcuffed.

15.  That various unknown Ky. State Police Officers then also began to participate in the intentional, vicious, deliberate, and prolonged attack on the Plaintiff also striking him with batons, kicking him, twisting his limbs, verbally abusing him, macing him, etc. even while the Plaintiff was handcuffed.

16.  That Officer Scott intentionally, willfully, wantonly and with deliberate indifference made up the entire story about the so-called drugs on the person of the Plaintiff in an attempt to justify the amount of force used upon this Plaintiff.

17.  That Officer Scott fabricated his citation to further attempt to protect and/or fraudulently protect his unlawful actions.

18. That Officer Scott has a history of the exact type of conduct that occurred with the Plaintiff and the Dept. of Motor Vehicles knew or should have known of same prior to the violations of this Plaintiff's constitutional rights in this matter.

19.  That Officer Scott in a further attempt to protect himself intentionally, willfully, wantonly and with deliberate indifference then "threw the proverbial book" at the Plaintiff by charging him with any and all potential crimes he could think of in a further attempt to conspire and cover up what he had done in this matter and to make it impossible to take a chance on defending himself in a court of law knowing he was not guilty but also knowing the potential penalties for same if a jury were to find him guilty despite being completely innocent.

20.  That unknown Ky. State Police Officers where enticed by Officer Scott into believing that additional assistance in the form of "force" was needed to gain control of this Plaintiff.

21.  That the same unknown Ky. State Police Officers who showed on I-75 on this night quickly became aware that there actions were in violation of the Plaintiff's constitutional rights and are now intentionally, willfully, wantonly, and with deliberate indifference, conspired to further cover up what truly transpired on this night when the Plaintiff's constitutional rights were clearly violated and are continuing to do so to this day by not coming forward and advising of same causing additional damages to this Plaintiff.

-3-

22. That the entire feigned pretext for such abuse was the resistance of the Plaintiff to arrest, which representation was false, and known to be false, by said Defendants knowing these acts of abuse violated Plaintiff's protected constitutional rights.

23. That the Plaintiff's injuries from the beatings given to him by the police officers in question were so severe he had to be taken by ambulance straight to a hospital from the side of I-75.

24. That Officer Scott of the Dept. of Motor Vehicles, including possibly some unknown Ky. State Police Officers, without legal justification and in violation of Plaintiff's constitutional rights, conducted a non-consensual, warrant less search of the Plaintiff's person, belongings and automobile for illegal contraband, including alcohol, drugs and drug paraphernalia in attempt to further justify the intentional, willful, wanton and deliberately indifferent beatings given to this Plaintiff.

25. That Officer Scott handcuffed the Plaintiff as tight as possible to ensure that the Plaintiff suffered additional severe pain and physical injury on the way to and at the hospital prior to allowing him to even ride in the ambulance despite his obvious and open injuries.

26. While at the said St. Elizabeth Hospital, the Defendant Dept. of Motor Vehicles and the Ky. State Police Department, through its officers, dictated and controlled the Plaintiff to such a degree that he was effectively denied adequate medical care. Plaintiff was rushed away from the nursing staff and/or doctors before he could adequately treat and flush Plaintiff's burned eyes caused by the mace, and Plaintiff was therefore kept in a continuing state of pain for which no further treatment was given. This violated Plaintiff's Eighth Amendment rights, securing against cruel and unusual punishment.

27. Plaintiff was questioned while under arrest without being informed of his *Miranda* rights. Questioning by Defendants did not cease when a clear and unambiguous request for an attorney's services had been made. Further, when the Plaintiff was allowed to eventually attempt to contact an attorney the phone given to him would not allow him to dial out at the time and said police officer(s) failed to assist him further to reasonably allow him to permit contact with a lawyer therefore in violation of the Plaintiff's Fifth Amendment right to counsel.

28. In addition, the Plaintiff was detained without cause for an extensive period of time in violation of his Fourth Amendment right to be free from unreasonable seizure and Fourteenth Amendment right to Due Process of Law.

29.  The physical and verbal abuses that Plaintiff suffered on June 22, 2007, were: painful, demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, and repulsive, signifying degradation. The physical and verbal abuses subjectively to Plaintiff, and from an objective standpoint, were unreasonable and in violation of Plaintiff's constitutional rights.

30.  The Defendant, Dept. of Motor Vehicles, and Defendant, Ky. State Police Department, by and through their police officers and agents, who were in the presence of the actively abusing officers who were violating the Plaintiff's civil rights on June 22, 2007, had a duty to protect the Plaintiff while in custody and to intervene to render such protection from unwarranted physical and mental suffering and abuse, which duty was violated by each officer so witnessing any phase of the violation of Plaintiff's rights, although their opportunity to intervene and lend assistance existed.

31.  The Defendant, Dept. of Motor Vehicles, and Defendant, Ky. State Police, at all times mentioned herein, were responsible for the establishment of policies, either formally or by custom for, and was responsible for, the employment, training, supervision, and conduct of the officers and employees of the Defendant Dept. of Motor Vehicles and the Ky. State Police Office. The offenses described in this Complaint resulted from the failure of said Defendants to employ qualified persons for positions of Dept. of Motor Vehicle Enforcement and the Ky. State Police Officers, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures, either formally or by custom to protect the constitutional rights of the citizens of the Commonwealth of Kentucky, including the Plaintiff. Also, the failure of the Defendants, Dept. of Motor Vehicles and the Ky. State Police Department, to train, or to adequately train even a single police officer involved in the treatment of the Plaintiff, as described herein, was a violation of Plaintiff's civil rights under 42 U.S.C. § 1983.

32.  All Defendants knew or should have known that the actions they took toward the Plaintiff on June 22, 2007 were unlawful under the circumstances. Despite such knowledge, Defendant Dept. of Motor Vehicles and Defendant, Ky. State Police, by and through their policymaking officials and agents, approved, intentionally ignored, or were deliberately indifferent to the practice of physical and verbal abuse without legal cause, or the potentiality thereof, and failed to change or eliminate such unlawful policy and practice.

33.  Defendant, Dept. of Motor Vehicles, and Defendant, Ky. State Police Department, by and through their promulgation of policies and

procedures, allowed its officers and agents to abuse arrestees which violated Plaintiff's constitutional rights.

34.  Alternatively, Defendant Dept. of Motor Vehicles and Defendant, Ky. State Police, by and through their failure to promulgate policies and procedures in accordance with the Constitution, in particular pertaining to physical and verbal abuse of persons involved with minor traffic offenses, and who posed no threat of harm, violated Plaintiff's constitutional rights.

35.  In the event that Defendant, Dept. of Motor Vehicles, and Defendant, Ky. State Police Department, had a constitutionally promulgated policy, which would have prohibited the abuses under the circumstances of this case, Defendant, Dept. of Motor Vehicles, and Defendant, Ky. State Police Department, acting by and through its agents, consistently and routinely violated such policy, the direct and proximate result of which, caused the unconstitutional deprivation of many of Plaintiff's protected rights.

36.  At all relevant times, Defendants Scott and unknown Ky. State Police Officers, individually and in their official capacities as officers for said departments as alleged herein, acted intentionally, negligently, willfully, maliciously, and/or with reckless or callous indifference to Plaintiff's constitutionally protected rights. Furthermore, at all relevant times, the Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Plaintiff's civil rights in the past, present and in the future.

37.  As a result of the Defendant, Dept. of Motor Vehicles, and Defendant, Ky. State Police Department's conduct, the Plaintiff has suffered, and will continue to suffer, severe mental anguish, pain and suffering, deprivation of his civil rights, and other damages, including but not limited to costs and attorney fees.

38.  The civil rights violations described in this Complaint were engaged in by the Defendants under color of law of the Commonwealth of Kentucky and the various police or motor vehicle departments as alleged herein.

(Doc. #1 at ¶¶ 8-38).

## III.  Procedural Background

Plaintiff's complaint arises under 42 U.S.C. § 1983, and involves allegations of

excessive force, unlawful arrest, and unlawful search and seizure.  More specifically, the

complaint alleges that Defendant Scott and other unknown KSP Troopers violated Plaintiff's civil rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. The complaint also brings state law claims of assault and battery, and intentional infliction of emotional distress.

Defendants Scott and the unknown KSP Troopers are sued in both their individual and official capacities. Plaintiff has also sued the KSP and KDMVE. Plaintiff seeks compensatory damages against the Defendants jointly and severally, as well as punitive damages. Defendant Scott has brought a counterclaim against Plaintiff for his own injuries which allegedly occurred as a result of Plaintiff's resistance during the arrest.

In the pending motions to dismiss, Defendants KSP, KDMVE, Scott in his official capacity, and unknown KSP Troopers in their official capacities move to dismiss the complaint against them on grounds of Eleventh Amendment immunity on Plaintiff's federal claims, and governmental/official immunity on Plaintiff's state law claims.

### III.    Analysis

#### A.    Standard of Review

Although not cited by Defendants in their motions, the Court construes both motions as being brought pursuant to Rule 12(b)(6), Federal Rule of Civil Procedure, which allows a defendant to move for dismissal of all or part of a complaint if it fails to state a claim upon which relief may be granted. When analyzing the sufficiency of a complaint, it is well-settled that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Courts shall "construe the complaint liberally

in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996).

        **B.**      **Plaintiff's Federal Claims against the KSP, KDMVE, Defendants Scott and Unknown KSP Troopers in their Official Capacities are barred by Eleventh Amendment Immunity.**

Plaintiff does not dispute the fact that both the KSP and KDMVE are arms of the executive branch of the Commonwealth of Kentucky.  Despite this concession, Plaintiff submits that both state agencies are still responsible for the actions of its employees because their employees' conduct violated his constitutional rights.  According to Plaintiff, because the acts alleged by him in the complaint violated clearly established rights of which a reasonable person would have known, and Defendant Scott and the unknown KSP Troopers lacked good faith in the performance of their duties, they are not entitled to qualified immunity.  Plaintiff's reliance on qualified immunity principles in responding to Defendants' Eleventh Amendment immunity argument is misplaced.  Plaintiff's responses do not address the seminal issue presented in the dismissal motions; that is, whether Eleventh Amendment immunity bars Plaintiff's federal claims asserted against the KSP, the KDMVE, and Defendants Scott and unknown KSP Troopers in their official capacities.

Although it is well-settled that § 1983 provides litigants with a federal forum to remedy alleged constitutional deprivations, *Will v. Michigan Department of State Police*, 491 U.S. 58, 66 (1989), state entities possess Eleventh Amendment immunity and absent a waiver, cannot be sued under § 1983.  *Id.*  As arms of the executive branch of the Commonwealth of Kentucky, the KSP and KDMVE are entitled to Eleventh Amendment immunity.  Likewise, employees of the KSP or KDMVE sued in their official capacities are entitled to the same Eleventh Amendment protection from federal claims. *Id.* at 71; *Moore*

*v. City of Harriman,* 272 F.3d 769, 772 (6th Cir. 2001) (state employees sued in their official capacities cannot be held liable for money damages under § 1983).

In this case, the facts relevant to the Eleventh Amendment inquiry are undisputed. Plaintiff does not dispute that both the KSP and KDMVE are state entities. The KSP is a statutorily-created department within the Justice and Public Safety Cabinet tasked with statewide law enforcement jurisdiction. *See* K.R.S. § 16.060. Further, its budget is funded by the Kentucky General Assembly. *See* K.R.S. § 16.050(1). Thus, the KSP is unquestionably an arm of the executive branch of the Kentucky state government. Similarly, although the KDMVE was a department organized within the Kentucky Justice and Public Safety Cabinet pursuant to K.R.S. § 15A.370 at the time of the incident in question, it was recently reconstituted as a division of the KSP (Doc. #5-3). Under either scenario, the KDMVE was also unquestionably an arm of the state for purposes of Defendant's immunity argument.

In his complaint, Plaintiff acknowledges that, at the time of the incident giving rise to this action, Scott and the unknown KSP Troopers were officially employed by either the KDMVE or the KSP. Thus, Plaintiff's complaint establishes that Scott and the unknown KSP Troopers were employed in official capacities by a state entity.

Since neither the KSP nor KDMVE has waived its sovereign immunity for claims such as those asserted by Plaintiff, it cannot be held liable for monetary damages arising from alleged federal civil rights violations. As outlined above, when sued in their official capacities under § 1983, Defendants Scott and the unknown KSP Troopers also cannot be held liable for monetary damages. *Moore,* 272 F.3d at 772.

-9-

Plaintiff's responses completely miss the mark.  Plaintiff largely relies on *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) and *Kentucky v. Graham,* 473 U.S. 159 (1985), and other cases that stand for the proposition that personal capacity suits seek to impose personal liability upon government officials for actions taken under color of state law.  However, these cases do not speak to official capacity suits against state officials.  As cautioned by the Supreme Court in *Graham:*

> "Proper application of this principle in damages against public officials requires careful adherence to the distinction between personal and official capacity action suits...this distinction apparently continues to confuse lawyers and confound lower courts..."

*Graham,* 473 U.S. at 165.  While Plaintiff has accurately stated the law on qualified immunity, his reliance is misplaced, as these decisions have absolutely no bearing on Defendant's immunity arguments concerning the KSP, KDMVE, or the official capacity defendants in this case.

For all of these reasons, Plaintiff may not proceed on its claims against the KSP or KDMVE, or its official capacity claims against Defendant Scott or the unknown KSP Troopers.  Plaintiff's claims against these Defendants are barred under the Eleventh Amendment and will accordingly be dismissed.

> **C.     Plaintiff's State Claims against the KSP, KDMVE, Defendants Scott and Unknown KSP Troopers in their Official Capacities are barred by Governmental Immunity**.

In addition to his federal claims, Plaintiff asserts state law claims for assault and battery (Count IV) and intentional infliction of emotional distress (Count V).  Defendants KSP, KDMVE and Scott and unknown KSP Troopers in their official capacities move to dismiss these state law claims on the basis of governmental/official immunity.

In support of its governmental/official immunity argument, Defendants rely upon *Yanero v. Davis*, 65 S.W. 3d 510 (Ky. 2001). The *Yanero* court held that a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary function. *Id.* at 519. In this case, it is uncontested that the law enforcement functions performed by the KSP and KDMVE and its employees are governmental. Law enforcement agencies such as the KSP and KDMVE are integral governmental functions traditionally and historically performed by government entities as opposed to private actors. *See City of Elizabethtown v. Casell*, 261 S.W. 2d 424 (Ky. 1953); *Hirschfield v. Commonwealth*, 76 S.W. 2d 47, 48 (Ky. 1934); *Caudill v. Pinsion*, 24 S.W. 2d 938, 940 (Ky. 1930).

As was the case in responding to Defendants' Eleventh Amendment immunity arguments, Plaintiff asserts that it was the "lack of good faith in the performance of their duties that precludes the officials from receiving the protection of immunity from these claims." Plaintiff is once again comparing apples to oranges and confuses the issues of governmental immunity with qualified immunity. Neither KSP, KDMVE, nor Defendants Scott or unknown KSP Troopers are moving to dismiss any claims brought against them in their individual capacities. Therefore, issues of good faith are not relevant in adjudicating the pending motions. *See Burnett v. Martin*, 2007 WL 3046066 at *4-5 (E.D. Ky. 10/16/07). In *Burnett*, the court noted that when a party seeks dismissal of claims asserted against him in his individual capacity, the qualified immunity analysis required consideration of several factors including whether the actions were taken in good faith. *Id.*

Relying on *Yanero*, Defendants Scott and unknown KSP Troopers sued in their official capacities argue that they possess the same governmental immunity from state law

tort claims as that of their employers.  65 S.W. 2d at 522.  The Court agrees.  *Yanero* held

that the application of governmental immunity to state law claims extends to employees

acting in their official capacities.  *Id.* at 519; *see also Burnett*, 2007 WL3046066 at *4 (E.D.

Ky.) ("If a state agency is deemed to have governmental immunity, its officers or employees

have official immunity when they are sued in their official or representative capacity.")

(*citing Autry v. Western Kentucky Univ.*, 219 S.W. 3d 713, 717 (Ky. 2007)).

Defendants Scott and unknown KSP Troopers are entitled to the protections of

governmental immunity with respect to the state law claims asserted against them in their

official capacities because at the time alleged by Plaintiff, each was employed in an official

capacity by the KSP or KDMVE.  As state agencies, the KSP and KDMVE are cloaked with

governmental immunity, which, under Kentucky law, extends to employees of those

agencies when they are sued in their official capacities.  Accordingly, Plaintiff's state law

official capacity claims against Defendants Scott and unknown KSP Troopers are barred

by governmental immunity.

### IV.    Conclusion

For the reasons discussed herein, **IT IS ORDERED** as follows:

(1)      the Motion to Dismiss of Defendant KSP and Motion for Partial Dismissal of

Unknown KSP Troopers in their Official Capacities (Doc. #3) be, and it hereby is, **granted**;

(2)      the Motion to Dismiss of KDMVE and Defendant Mark Scott in his Official

Capacity (Doc. #5) be, and it hereby is, **granted**;

(3)      In view of the dismissals set forth in paragraphs (1) and (2) above, Counts

I and III of Plaintiff's Complaint be, and they hereby are, **dismissed**;

(4)      The remaining Defendants shall file answers to the Complaint **not later than March 17, 2009**;

(5)      Pursuant to Rules 16 and 26 of the Federal Rules of Civil Procedure, **not later than March 24, 2009**, all parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of their remaining claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan.  *See* Fed. R. Civ. P. 26(f).

(6)      **Within ten (10) days after the meeting** required in paragraph (5), the parties shall file a joint status report containing:

(a)      the proposed discovery plan;

(b)      the parties' estimate of the time necessary to file pretrial motions;

(c)      the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

(d)      the parties' estimate as to the probable length of trial.

Should the parties find that a joint report is not possible, the parties shall each file individual reports which the Court shall entertain for purposes of setting a Scheduling Order for this case.

This 3rd day of March, 2009.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\ORDERS\Cov08\08-110 - MOO granting MTD.wpd

-14-