UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CIVIL ACTION NO. 08-110-JGW

JOHN COLEBROOK, PLAINTIFF

v.

KENTUCKY DEPARTMENT OF
MOTOR VEHICLE ENFORCEMENT, et al., DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Defendant Mark Scott has filed a motion for summary judgment in his individual capacity.[1] Plaintiff filed a response in opposition, to which defendant Scott has filed a reply. On July 27, 2010, the court filed a Memorandum Opinion and Order partially addressing issues presented by the pending motion for summary judgment, but did not issue any final rulings. Instead, the court requested supplemental briefing from the parties on specific issues relating to dismissal for failure of service.

Having now reviewed the parties' supplemental memoranda, the court will deny the defendant's motion to the extent that it is based on a defect in service, but will grant defendant's motion in part to the extent that it is based on the alternative ground of qualified immunity. Portions of the court's prior discussion and analysis have been repeated for the convenience of this court.

**I. Factual and Procedural Background**

Defendant Mark Scott is employed with the Kentucky State Police in the Division of

---

[1]The parties have consented to disposition of all proceedings, including trial, before the undersigned magistrate judge. See 28 U.S.C. §636( c).

Vehicle Enforcement.[2] On June 22, 2007, Officer Scott effected a traffic stop of a vehicle driven by plaintiff John Colebrook on Interstate 75, just south of the Dry Ridge, Kentucky exit. Following the stop, Scott informed Colebrook that he was under arrest for DUI . A struggle or - according to Colebrook -"attack" ensued, *see* Complaint at ¶14-15, during which additional officers (Grant County Deputy Lee Jacobs and Kentucky State Trooper Delsey Kelly) arrived on the scene. Shortly after the arrest, Kentucky State Police Canine Officer Jerry Handy also arrived to assist in locating a container that officers allege Colebrook discarded during his encounter with Scott. Colebrook denies deliberately throwing any container, much less an alleged container of marijuana.

Because Colebrook was injured, an ambulance was called to transport Colebrook to Saint Elizabeth's Hospital Emergency Room in Grant County. Hospital records reflect that Colebrook arrived at approximately 12:46 a.m. on June 23, 2007, and was treated and discharged approximately two hours later at 2:42 a.m. He was then transported to the Grant County Detention Center.

Officer Scott charged Colebrook with speeding, DUI, menacing, resisting arrest, possession of drug paraphernalia, possession of marijuana, open alcohol container in vehicle, failure to notify of change of address, and tampering with physical evidence. All of the charged offenses, except for tampering with physical evidence, are violations or misdemeanors under Kentucky law.

On September 24, 2007, Colebrook pleaded guilty to the offenses of DUI, speeding, possession of an open alcohol container in vehicle, and failure to notify of change of address.

---

[2]Plaintiff represents that the Department of Vehicle Enforcement merged into the Kentucky State Police after the date of the incident that gave rise to this lawsuit.

The Grant County Attorney dismissed all remaining charges.

On June 20, 2008, Colebrook filed this action, naming as defendants the Kentucky State Police, the Kentucky Department of Motor Vehicle Enforcement, Unknown Police Officers of the Kentucky State Police, and Officer Scott in both his individual and official capacities. Only one summons was issued for Officer Scott, with service directed to Greg Howard, Commissioner of Vehicle Enforcement. The summons was sent by certified mail to KVE headquarters, and was signed for by Thomas Moore, an employee in Finance and Administration. Prior to filing a responsive pleading, defense counsel and plaintiff's counsel exchanged brief email messages in which service was discussed. An email dated August 18, 2008 from the KSP Legal Office explained that the KSP Legal Office "recently assumed responsibility for KVE," and that they were "checking on the service of process issue to Officer Scott." The email continued: "Without waiving any issues on sufficiency of service, we would ask that you give us two weeks to track service on officer Scott and to file appropriate responses for Scott and KVE." Doc. 52-2. Plaintiff's counsel subsequently agreed to the requested extension.

On or about August 21, 2008, Officer Scott, solely in his official capacity, moved to dismiss on grounds of immunity. Doc. 5. In addition to Officer Scott in his official capacity, the motion to dismiss was filed by the Kentucky State Police and the Kentucky Department of Motor Vehicle Enforcement.

On August 22, 2008, Officer Scott filed an Answer in his individual capacity along with a counterclaim against Colebrook. Under "defenses" Officer Scott specifically pled and preserved the affirmative defense that "The Complaint should be dismissed due to insufficient service of process." The counterclaim asserts that plaintiff Colebrook committed the tort of assault and battery on defendant Scott.

3

On March 3, 2009, then-presiding District Judge David L. Bunning granted the motion to dismiss filed by the two law enforcement entities and Officer Scott in his official capacity, leaving only two remaining defendants: Officer Scott in his individual capacity, and "Unknown Police Officers of the Kentucky State Police Department" in their individual capacities. Counts I and III of plaintiff's complaint were dismissed in their entirety. (Doc. 11).

On March 10, 2009, the court amended its March 3 opinion to clarify that the "unknown" defendant officers were not required to file an answer until such time (if ever) that plaintiff was granted leave to amend his complaint to identify them. Doc. 15. However, the "unknown" defendant officers were never identified, and no service on them was ever effected. Therefore, in its July 27, 2010 opinion the court directed plaintiff to "show cause" why it should not dismiss the never-served and unidentified defendant officers. Plaintiff now concedes that dismissal of those unserved defendants is appropriate.

As the only identified defendant, Scott moved for summary judgment, or in the alternative partial summary judgment, on two grounds: 1) insufficiency of service of process; and 2) qualified immunity as to all claims except for plaintiff's excessive use of force claim and defendant's counterclaims for assault and battery. As the court stated on July 27, it is a close question as to whether defendant Scott is entitled to dismissal of all claims based upon a fatal defect in service. However, having benefitted from the parties' supplemental briefing, the court finds that Scott waived the defect through the course of his conduct throughout this litigation, such that he is not entitled to dismissal on that basis.

Nevertheless, the court finds merit to the alternative ground of qualified immunity presented by defendant. Based on that ground, the court will grant defendant's motion for summary judgment as to all claims except for plaintiff's claim for excessive use of force and

4

defendant's counterclaim.

**II. Analysis**

**A. General Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The court has construed all relevant facts in favor of the plaintiff, and no material facts are in dispute. Because defendant is entitled to qualified immunity on most of plaintiff's claims, defendant is entitled to partial judgment as a matter of law.

**B. Insufficiency of Service**

As discussed at some length in the July 27 opinion, service of process was unquestionably defective in this case. However, based on the unique facts presented, the court concludes that the defendant waived the defect in service through his course of conduct.

The defect occurred because in Kentucky, personal service is required for individual defendants. While service may be made by certified mail, the certified mail must be signed for and accepted by the defendant. *See e.g., Douglas v. University of Kentucky Hospital*, 2008 WL 2152209 (Ky. App. 2008)(CR 4.01(a) provides for service by certified mail but dismissal proper

where defendants did not sign receipt); *see also Harris v. City of Cleveland*, 190 F.R.D. 215, 219 n. 9 (N.D. Ohio 1999)(dismissal for failure to serve personally officers in their individual capacities; certified mail to place of employment insufficient); *Weekly v. U.S. Parole Commission*, 707 F. Supp. 282, 285 n.6 (E.D. Ky. 1988)(service on employee at regional office sufficient for service on defendant in official capacity, but not in individual capacity).

Here, plaintiff attempted service on defendant Scott in his individual capacity through service by certified mail on defendant's employer, but Scott never signed the receipt and was not personally served. *See generally The Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988)(service on Department of Justice sufficient for defendants in official capacities but not effective service on defendants in individual capacities); *Jones v. Fuller*, 134 S.W.2d 240 (Ky App. 1939)(service on employer not sufficient).

Plaintiff initially argued that the defendant waived any defect in service by making a general appearance both in his Answer and in asserting a Counterclaim. However, as previously discussed in the July 27 opinion, neither the Federal Rules of Civil Procedure nor case law fully supported plaintiff's initial argument.

In a supplemental memorandum filed at the court's directive, plaintiff argues that a waiver occurred because defendant Scott in his first appearance filed a motion to dismiss that did not raise the alleged defect in service. This argument is misplaced because defendant's motion to dismiss was his first appearance only in his *official* capacity. Defendant Scott's first appearance in his *individual* capacity was through his Answer, which included the assertion of the affirmative defense of a defect in service.

Plaintiff's alternative argument - that defendant should be deemed to have waived the defense through his course of conduct in this litigation- finds more purchase. As previously

stated by this court, "[e]ven though Scott technically preserved the defense of the defect in service in his Answer, the issue of whether Scott's subsequent conduct should constitute a waiver is extremely close." Defendant Scott filed his Answer on August 22, 2008, but did not move for judgment based on the defect in service until nineteen months later. During that nineteen month period, defendant fully participated in fairly extensive discovery that itself spanned more than a year, from March 2009 until April 2010. Defendant Scott's decision to file a motion to dismiss only in his official capacity, but to delay filing a motion in his individual capacity based on the defect in service until following the completion of discovery, has never been fully explained.

In his supplemental memorandum, defendant Scott offers a partial explanation, stating that he did not want to raise the defect at first because it could have been easily cured within the 120 day period. But that explanation falls far short of stating reasons for his participation in over a year's worth of discovery long after the 120 day period had expired.

As the court previously noted, the presence of defendant's counterclaim further clouded the issue of defendant's intentions. *See HTC Sweden AB v. Innovatch Products and Equipment Co.,* 2010 WL 2163122 (E.D. Tenn. May 27, 2010)(finding waiver where defendant had delayed filing motion, asserted multiple counterclaims, and joined additional parties through third-party claims). Even though *HTC* and other cases cited by this court are distinguishable in some respects, the simple truth of the matter is that whether to grant a dismissal based on a defect in service remains within the court's discretion. It is the judgment of this court after further reviewing the parties' memoranda and relevant case law that the defendant's course of conduct does not support dismissal of plaintiff's claims on that basis, but instead favors a finding of waiver.

### C. Qualified Immunity

Defendant Scott argues in the alternative that he is entitled to qualified immunity with respect to some of plaintiff's claims. The court agrees, and therefore will grant partial summary judgment in favor of the defendant on this alternative basis. Specifically, defendant Scott is entitled to judgment on plaintiff's claims that he made an unlawful *Terry* stop, that he made an unlawful arrest, that he violated plaintiff's rights in conducting a search incident to the arrest, that he unreasonably searched plaintiff's property, that he violated plaintiff's *Miranda* rights, that he violated plaintiff's rights under the Eighth and/or Fourteenth Amendments, and that he violated plaintiff's Fourth Amendment rights in the manner in which he handcuffed plaintiff.

Government officials are entitled to qualified immunity so long as their acts do not violate clearly established statutory or constitutional rights of which a reasonable officer would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). To determine whether qualified immunity applies, a court must review whether the facts alleged would establish a constitutional violation if substantiated, and whether it would have been clear to a reasonable officer that his actions were unlawful in the situation presented.

### 1. Alleged Unlawful Terry Stop/Arrest Claims

A *Terry* stop may be lawfully made if an officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In this case, the basis for the traffic stop was speeding. In his response to defendant's motion for summary judgment, plaintiff now concedes that "he was probably stopped by Officer Scott for a valid reason," but he does not concede the allegedly unlawful arrest. Doc. 66 at 9.

Plaintiff pleaded guilty to both speeding and DUI offenses. Under Kentucky law, DUI is

an offense for which an officer may effect a warrantless custodial arrest. *Se*e KRS 431.005(1)(e). To prevail on claims relating to unlawful arrest and seizure, a plaintiff must be able to demonstrate a lack of probable cause. Given plaintiff's plea in this case, it is beyond question that Officer Scott not only had reasonable suspicion for the *Terry* stop, but probable cause for the arrest. Because the facts alleged reveal no constitutional violation, Officer Scott is entitled to qualified immunity on these claims.

### 2. Unlawful/Unreasonable Search Claims

Plaintiff also alleges that he and his vehicle were improperly searched by the defendant incident to the arrest. Again, Officer Scott is entitled to qualified immunity in part because the plaintiff was lawfully arrested for DUI. An officer may search the driver of a vehicle where the search is conducted incident to a custodial arrest. *See Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009). Prior to *Gant*, a search of a vehicle and containers located therein was also presumed to be permissible, under *New York v. Belton*, 453 U.S. 454 (1981). However, in *Gant* the Supreme Court changed the landscape by holding that *Belton* does not generally authorize a vehicle search incident to an arrest after the arrestee has been secured and cannot access the vehicle.

Officer Scott is entitled to qualified immunity because, at the time of the incident in question, *Gant* had not yet been decided. Rather, at the time of the incident *Belton* controlled and a reasonable officer would have believed that the search of the vehicle was permissible. As the Court in *Gant* itself anticipated, "[b]ecause a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for search conducted in reasonable reliance on that understanding." 129 S. Ct. at 1723 n. 11; *see also United States v. Amos*, ___ F. Supp.2d ___, 2010 WL 3087435 (E.D. Tenn. 2010); *United States v. Grote*, 629 F. Supp.2d 1201 (E.D. Wash. 2009)(suggesting that vehicle search incident to DUI

9

arrest may fit within *Gant* parameters of constitutional search).

Plaintiff also asserts that, even if the search itself was permitted, the manner of the search violated his constitutional rights because some unknown person opened and poured three cans of beer on the floor of his vehicle between the time of his arrest and the time he retrieved his car from the towing lot. However, Officer Scott is entitled to qualified immunity on that claim because plaintiff admits he did not see anyone pour the beer, never complained to the towing company or anyone else prior to filing suit, and did not document the alleged damage (which he asserts was ruined floormats). Officer Scott testified he had no knowledge of the incident and plaintiff has offered no contrary evidence. It is likewise undisputed that the defendant did not have exclusive possession of the vehicle, as it was towed by a commercial towing company following plaintiff's arrest.

In fact, in his response to defendant's motion for summary judgment, plaintiff asserts that "[w]hoever poured the beer all over the car was just a jerk," but concedes "that this activity does not rise to the level of a constitutional violation." Doc. 66 at 9. Given plaintiff's concession and his failure to "present affirmative evidence in order to defeat [defendant's] properly supported motion for summary judgment," *see Street v. J.C. Bradford & Company*, 886 F.2d 1472, 1479 (6th Cir. 1990), Officer Scott is entitled to judgment as a matter of law on this claim.

### 3. *Miranda* Rights

Plaintiff's complaint alleges that defendant violated his *Miranda* rights and/or right to counsel under the Fifth Amendment. Colebrook alleges that defendant read plaintiff his implied consent DUI testing rights under KRS 198A.105, that Colebrook tried to contact an attorney without success, and that plaintiff eventually refused to provide defendant Scott with a testing sample. Because no statements were used against plaintiff in light of his negotiated plea

agreement, plaintiff has no cause of action for the alleged violation under 42 U.S.C. §1983. *See McKinley v. City of Mansfield*, 404 F.3d 418, 430 (6th Cir. 2005), *citing Chavez v. Martinez*, 538 U.S. 760, 769 (2003).

**4. Fourteenth and Eighth Amendment Claims**

Plaintiff alleges in Counts II and III that defendant violated his due process and equal protection rights under the Fourteenth Amendment, and subjected him to cruel and unusual punishment under the Eighth Amendment. Count III was previously dismissed in total. Doc. 11.

Defendant is entitled to judgment as a matter of law on the remaining claims because all claims based on the excessive use of force in the arrest context are cognizable only under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment and not the Eighth Amendment continues to govern so long as the arresting officer retains custody. *See McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988). Similarly, claims involving the pretrial deprivation of liberty are cognizable only under the Fourth Amendment, not under the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266 (1994). Therefore, plaintiff's due process, equal protection, and cruel and unusual punishment claims fail to state a claim upon which relief may be granted, as the facts presented reflect no violation of the referenced constitutional rights by the defendant.

**5. Alleged Denial of Medical Care**

Plaintiff alleges that defendant additionally violated his Eighth Amendment rights by refusing to permit medical staff to provide treatment to plaintiff following his exposure to pepper spray during the arrest. As stated, the Eighth Amendment does not apply to pretrial detainees. However, pretrial detainees do have a right to adequate medical treatment under the Fourteenth Amendment, and a defendant can be held liable under §1983 for "deliberate indifference to a

prisoner's [or detainee's] serious illness or injury." *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).

On the facts presented, the defendant is entitled to summary judgment on this claim because plaintiff was provided medical care; he was transported by ambulance to the emergency room for treatment. The paramedics attending to plaintiff at the time of his arrest testified specifically that he flushed Colebrook's eyes for mace. Emergency room records also reflect treatment over a two hour period of time. There is nothing in any of the records that reflects any complaint about continuing pain from the use of mace, or that remotely supports plaintiff's conclusory allegation that defendant Scott prevented him in any respect from receiving treatment. In fact, plaintiff testified that he did not recall asking for treatment of his eyes while he was at the hospital.

In response to the defendant's motion, plaintiff appears to concede that he was properly treated after the ambulance arrived, but alleges that he "remained in pain from the pepper spray until an ambulance arrived and an EMT flushed Colebrook's eyes," suggesting that treatment was improperly delayed or withheld by Officer Scott prior to the arrival of the ambulance. Doc. 66 at 13. This new allegation contrasts with the allegation in paragraph 26 of plaintiff's Complaint, which focuses on his treatment at the hospital and claims that he was "rushed away from the nursing staff and/or doctors before he [sic] could adequately treat and flush Plaintiff's burned eyes."

Having conceded that his treatment following the arrival of the ambulance was appropriate and not impeded by the defendant, plaintiff's new suggestion that the defendant somehow failed to treat him before the arrival of emergency personnel is so lacking in evidentiary support that it cannot survive summary judgment. There is no evidence that Officer

Scott delayed in calling for medical treatment, or that the defendant had the ability to treat plaintiff prior to the arrival of the EMTs but refused to do so. Therefore, defendant is entitled to judgment on this claim.

### 6. Tight Handcuffs Claim

Plaintiff alleges that the defendant "handcuffed the Plaintiff as tight as possible to ensure that the Plaintiff suffered additional severe pain and physical injury on the way to and at the hospital...." (Doc. 1, para. 25). He testified that he complained at the time of his arrest about excessively tight handcuffs, but could not recall whether he specifically complained to defendant Scott. The handcuffs were removed upon his arrival at the hospital. Despite his assertions of injury, no medical records either from TransCare or from St. Elizabeth Hospital reflect that plaintiff made any complaint at all about injury to his wrists. The emergency room physician specifically testified that if plaintiff had made any complaint of injury to his wrist or from the handcuffs, a notation in the records would have been made. Where there is no evidence to support a conclusory claim of injury based on a claim of excessively tight handcuffs, summary judgment may be appropriate. *See Meadows v. Thomas*, 117 Fed. Appx. 397 (6th Cir. 2004)(holding that a plaintiff must allege that he complained to officers that the handcuffs were too tight, and that as a result of being left in handcuffs that were applied too tightly, he incurred injury to his wrists).

On the other hand, several published Sixth Circuit cases support permitting plaintiff's claim to proceed to trial, notwithstanding the relative weakness of the claim presented here. *See e.g., Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997). Because plaintiff is entitled to all inferences in his favor, the court will permit this claim to proceed to trial.

### 7. Verbal Abuse Claims

Plaintiff alleges that officers verbally insulted him and called him a baby during his arrest, although again, he could not recall if defendant Scott did so. Mere allegations of verbal abuse do not present an actionable claim under §1983, *see e.g., Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993). Therefore, defendant is entitled to summary judgment on this claim.

### 8. State Law Intentional Infliction of Emotional Distress Claim

In addition to his federal claims, plaintiff alleges in Count V of his complaint that the defendant violated state law by committing the tort of intentional infliction of emotional distress. However, when a defendant's conduct amounts to the commission of a traditional tort for which recovery for emotional distress is allowed, and the conduct was not intended solely to cause extreme emotional distress to the victim, an independent claim for the tort of outrage will not lie under Kentucky law. *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993). On the facts presented, plaintiff has neither alleged nor does the evidence support an inference that Officer Scott's conduct was intended *solely* to inflict emotional distress versus part and parcel of the alleged assault and battery. Any claim for damages resulting from emotional distress appears to be recoverable under the traditional tort of assault and battery, which plaintiff has pleaded in Count IV. Therefore, the defendant is entitled to summary judgment on plaintiff's free-standing state law claim of intentional infliction of emotional distress. In addition, even if plaintiff's allegations would otherwise support a free-standing claim, the defendant would be entitled to summary judgment because the allegations regarding Officer Scott's conduct fall far short of the standard for such claims under Kentucky law. *See, e.g., Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000); *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).

### 9. Fourth Amendment Excessive Force Claim and Counterclaim

As defendant Scott acknowledged, summary judgment is not appropriate on the essence of plaintiff's claims, concerning allegations that defendant Scott used excessive force against plaintiff during the course of his arrest in violation of the Fourth Amendment and state law. Material issues of disputed fact remain in dispute on this claim, as they do on defendant's counterclaim under state law..

### III. Conclusion and Order

For the reasons discussed herein, **IT IS ORDERED THAT:**

1. For reasons stated in the court's July 27, 2010 opinion, the Unknown Police Officers of the Kentucky State Police are hereby **dismissed without prejudice** based upon plaintiff's failure to timely amend his complaint and failure to perfect service;

2. The motion for summary judgment of the sole remaining defendant, Officer Scott in his individual capacity, is **granted in part as follows:**

    a. All claims against defendant Scott are **dismissed with prejudice** as more fully discussed herein, except plaintiff's Fourth Amendment claim alleging the excessive use of force during plaintiff's arrest and plaintiff's related claim for excessively tight handcuffs;

    b. The defendant's motion insofar as it seeks judgment based on the defect in service is **denied** due to defendant's waiver;

3. All discovery having been completed in this case, a final pretrial conference shall be held on **Wednesday, January 19, 2011 at 1:30 p.m.** with trial by jury to commence on **Wednesday, March 2, 2011 at 9:30 a.m.**

This the 2nd day of December, 2010.


Signed By:
J. Gregory Wehrman
United States Magistrate Judge